IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
4:13-CV-34-BO

| | |
|---|---|
| JOE HAND PROMOTIONS, INC., ) | |
| ) | |
| Plaintiff ) | |
| v. ) | **ORDER** |
| ) | |
| GEORGE LIONEL JOHNSON, et al., ) | |
| ) | |
| Defendants. ) | |

This matter is before the Court on plaintiff's Motion for Default Judgment pursuant to Federal Rule of Civil Procedure 55(b)(2). [DE 11]. Finding that willful violations of section 605 entitle plaintiff to statutory damages, the Court AWARDS damages in the amount of $1,500.00, as well as attorneys' fees and costs.

BACKGROUND

This dispute arises from the broadcast of the Ultimate Fighting Championship 116: Lesnar v. Carmin (the Program) on July 3, 2010. Plaintiff Joe Hand Promotions, Inc. (Joe Hand) distributes sports and entertainment programming to commercial establishments. Plaintiff entered into an agreement with the Program's promotor which gave plaintiff the exclusive right to license exhibition of the Program to commercial establishments.

On February 11, 2013, Joe Hand filed this lawsuit, alleging that defendants unlawfully intercepted and intentionally broadcasted the Program at George's Private Club (the Club) in violation of Sections 605 and 553 of Title 47 of the United States Code. The complaint also included a pendent state law claim for conversion.

Defendants have failed to file any responsive pleadings. As a result, the Court entered default on November 6, 2013, and now enters default judgment based on the affidavits and supporting memoranda provided by Joe Hand. [DE 10, 12].

DISCUSSION

For a default judgment, well-pleaded factual allegations are sufficient to establish a defendant's liability. Fed. R. Civ. P. 55(a); *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). The allegations in the complaint regarding the amount of damages suffered, however, are not controlling. *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 422 (D.Md. 2005). Therefore, while Joe Hand requests $60,000 in damages, such a request is not dispositive.

Plaintiff elected to receive damages under 47 U.S.C. § 605, which regulates radio transmissions, rather than 47 U.S.C. § 553, which regulates cable transmissions. Accordingly, the Court must only determine liability under § 605. *See, e.g., Joe Hand Promotions, Inc. v. Phillips*, No. 06 Civ. 3624, 2007 WL 2030285, at *3 (S.D.N.Y. July 16, 2007). Section 605(a) prohibits unauthorized individuals from intercepting "radio communication" and publishing the "existence, contents . . . or meaning of such intercepted communication to any person." Section 605 applies when the transmission involves a satellite signal intercepted by defendant. *J & J Sports Prods., Inc. v. Lara Sport House Corp.*, No. 1:10-CV-1369, 2011 WL 4345114, at *5 (E.D.Va Aug. 26, 2011) citing *Int'l Cablevision, Inc. v. Sykes*, 75 F.3d 123, 130–33 (2d Cir. 1996). The telecast at issue here originated as a satellite transmission. As defendants' conduct included the unauthorized interception of satellite signals, liability under § 605 of the Cable Act has been established.

The complaint names George Johnson as an individual defendant. For an individual to be liable under the Cable Act, he must have "had supervision or control over the infringing activities, or . . . reaped some commercial benefit" from the violation. *J & J Sports Prods., Inc. v. Mayreal, II, LLC*, 849 F. Supp. 2d. 586, 589 (D.Md. 2012). Absent allegations that Mr. Johnson authorized, directed, or supervised the illegal interception, Joe Hand cannot establish Mr.

2

Johnson's individual liability. *See, e.g., Joe Hand Promotions, Inc. v. Coaches Sports Bar*, 812 F. Supp. 2d. 702, 703–04 (E.D.N.C. 2011); *Kingvision Pay-Per-View, Ltd. v. Las Reynas Rest., Inc.*, No. 4:07-CV-67, 2007 WL 2700008, at *1 (E.D.N.C. Sept. 11, 2007); *Mayreal II*, 849 F. Supp. 2d. at 590–93.

While this case presents a close question, the Court finds that the allegations in Joe Hand's complaint do not establish Mr. Johnson's individual liability. Plaintiff conclusorily alleges that Mr. Johnson had supervisory control over the activities occurring at the Club on the date of the Program, that he is an officer, director, shareholder, and/or principal of the Club, and that he received a financial benefit from the Club. [DE 1, ¶ 7–9]. The complaint, however, alleges neither that Mr. Johnson supervised the illegal inception itself, nor that Mr. Johnson was even present in the Club on the date the Program aired. *See Mayreal II*, 849 F. Supp. at 592 ("Plaintiff alleges no facts to show that [defendants] had personal knowledge of, or the ability to supervise and control, the alleged unlawful interception of the Program . . . In addition, plaintiff alleges conclusorily and upon information and belief that [the individual defendants] are 'officer[s], director[s], shareholder[s], employee[s], agent[s], and/or other representative[s] of [the corporate defendant]."). Therefore, the Court awards damages only against the Club.

An aggrieved party is entitled to actual damages or statutory damages. § 605(e)(3)(C)(i). Statutory damages may be awarded in a sum of not less than $1,000 nor more than $10,000, as the court considers "just." § 605(e)(3)(C)(i)(II). If the violation is willful and committed for commercial advantage or private financial gain, statutory damages may be increased to $100,000 at the court's discretion. § 605(e)(3)(C)(ii). Plaintiff requests statutory damages.

At plaintiff's election and because actual damages would be impossible to calculate given defendants' unresponsiveness, the Court will award statutory damages in its discretion. Courts in

3

this circuit have used two approaches to exercising their discretion in awarding damages. The first approach involves multiplying a certain amount by either the number of patrons observed in the defendant's establishment when the program was shown or by the establishment's maximum occupancy. *Joe Hand Promotions, Inc. v. Bougie, Inc.*, No. 109-CV-590, 2010 WL 1790973, at *5 (E.D.Va. Apr. 12, 2010) (patrons present); *Kingvision Pay-Per-View, Ltd. v. Admiral's Anchor, Inc., No. 2*, 172 F. Supp. 2d 810, 812 (S.D.W.Va. 2001) (maximum occupancy). The second approach is to award a flat sum per violation. *Coaches*, 812 F. Supp. 2d at 704–05 ($6,000); *J & J Sports Prods., Inc. v. J.R. 'Z Neighborhood Sports Grille*, No. 2:09-CV-03141, 2010 WL 1838432, at *1 (D.S.C. Apr. 5, 2010) ($5,000); *Joe Hand Promotions, Inc. v. Angry Ales, Inc.*, No. 3:06-CV-73, 2007 WL 3226451, at *5 (W.D.N.C. Oct. 29, 2007) ($1,000).

As in previous cases, the Court believes that awarding a flat rate of damages, linked to the maximum occupancy of the establishment and the egregiousness of the violation, is most consistent with the aims of the statute and with the quantum of harm actually suffered by Joe Hand. Section 605 provides that when a court awards statutory damages, it should fasion a damages award that is "just." § 605(e)(3)(C)(i)(II). Although these calculations are speculative, "some speculation with respect to damages is permissible where, as here, a defendant's default has prevented damages from being computed with greater certainty." *Kingvision Pay-Per-View, Ltd. v. Arnoat*, No. 06 Civ. 4811, 2007 WL 2076632, at *6 (S.D.N.Y. July 13, 2007).

Joe Hand calculates rates for its contracts based on a maximum occupancy. [DE 12–2]. The rate card attached to plaintiff's Motion describes the prices charged for a lawful sublicensing agreement, which vary based on the capacity of the entity broadcasting the Program. According to the rate card and attached affidavit, the Club would have paid $900 to broadcast the Program lawfully. [DE 12–3, 12–2]. Absent any indication of aggravating factors, such as repeat

4

violations or substantial monetary gains, this Court finds that a damage award of the statutory maximum would be excessive and out of line with awards in similar cases.

As to enhancement, there is no question that the Club intercepted and broadcasted the Program willfully and for commercial advantage. Joe Hand alleges that the Program was encrypted and made available only to its paying customers, therefore it is unlikely that defendants accidentally received the Program. In light of the circumstances and the deterrence goal of § 605, the Court awards statutory damages of $1,000.00. The Court multiplies the statutory damages by a willfulness factor of 1.5, for a total damages award of $1,500.00.

An award of costs, including attorneys' fees, is mandatory under § 605(e)(3)(B)(iii). Plaintiff submitted an affidavit seeking $475 in costs and $1,500 in attorneys' fees, for a total of $1,975. [DE 12–5]. Section 605(e)(3)(B)(iii) requires the court to award costs and "reasonable" attorney's fees. In determining what constitutes a reasonable number of hours and the appropriate hourly rate, the court must consider the following factors: "(1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awarded in similar cases." *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978). In determining whether a rate is reasonable, the court is to consider "prevailing

5

market rates in the relevant community." *Rum Creek Coal Sales, Inc. v. Caperton,* 31 F.3d 169, 175 (4th Cir. 1994) (quoting *Blum v. Stenson,* 465 U.S. 886, 895 (1984)).

Plaintiff's attorney submitted an affidavit anticipating a total of six hours of work at a rate of $250 per hour, for a total of $1,500 in attorneys' fees. As defendants never responded to the complaint, the only tasks necessarily performed by plaintiff's attorney were drafting the complaint and motion for default judgment. Given the work performed and the Court's knowledge of comparable rates in the area, the Court finds plaintiff's requested amount unreasonable and believes an award consistent with five attorney hours spent at a rate of $200.00 per hour is appropriate. Plaintiff is further entitled to $350.00 in filing fees and $125.00 for service of process. 47 U.S.C. § 605 (e)(3)(B)(iii). Accordingly, the judgment should include fees and costs of $1,475.00 ($475.00 in costs and $1,000.00 in attorneys' fees).

## CONCLUSION

Based on the foregoing, plaintiff's Motion for Default Judgment is GRANTED. [DE 11]. The Clerk of Court is DIRECTED to enter a judgment against defendants in the amount of $1,500.00. In addition, attorneys' fees are awarded to plaintiff Joe Hand in the amount of $1000.00. Costs are awarded to plaintiff Joe Hand in the amount of $475.00.

SO ORDERED, this __11__ day of February, 2015.

*Terrence W. Boyle* (signature)
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE